Our fifth and final case this morning is 19-8082, Radiance Capital v. Crow, and for the appellant, Mr. Grunton, you may proceed. Thank you, Your Honor. David Von Gutten, appearing on the receivables, 19 LLC, and I'm going to try to reserve three minutes for rebuttal. What is before the court today is if you allow a creditor shield of tenancy by the entirety to exclude between one to two million dollars from creditors in the bankruptcy estate. In doing this, when one, the assets are not properly tenancy by the entirety assets, two, the vehicle in which the assets are held is wholly inconsistent with tenancy by the entirety, and three, the unashamed depletion of the purported tenancy by the entirety assets by family insiders with no benefit to the tenancy by the entirety estate, and four, the tenants voluntarily severed the estate to provide funds to the non-bankruptcy filing spouse. Now, the court would be allowing this to happen and allow the creditor shield to exist when what is going on here is entirely outside the traditional parameters of tenancy by the entirety. Can a brokerage account, investment account ever meet those criteria? No, I don't think so, Your Honor. Yeah, okay. What assets would and what assets would not be eligible? The type of assets that would are assets where the chattel is embodied in an instrument, and an instrument is something of transfer or conveyance. Well, that's a UCC definition that you're using, aren't you? No, not just a UCC definition. We're not just talking about negotiable instruments. There's a Wyoming statute that talks about personal property being able to be conveyed by the instrument of conveyance or transfer. And so when you're talking about money or accounts, you're saying these types of tenancies are not applicable? I do not think they fit. And the reason why, and it's for all four of these items that I described, it's because of the creditor shield. If we're only talking about a joint tenancy with right of survivorship, these issues are less important, if not wholly unimportant. The joint tenancy does not provide the creditor shield. And I provided the four bases upon which the court could deny the tenancy by the entirety creditor shield to the appellees in this action. If you find for my client, I need one of the four, then the creditor shield falls and the assets in the fidelity account are available to the bankruptcy trustee, and then to the creditors of the estate. Now, of course, I in my client's favor. Number one, which we were just dealing with on Justice Timkovich's question here. Traditionally, tenancy by the entirety was to protect the homestead for the wife and children of a profligate husband, to preserve the homestead for the family. That's not an issue here. The tenancy by the entirety status of the home of the debtor and his spouse has not been challenged. Well, but under the Wyoming statutes, it seems to me they have really gone way beyond the homestead. I mean, we're talking about all kinds of accounts. We're talking about things that sound very parallel to the fidelity account here. I don't think so for tenancy by the entirety creditor shield, you get joint tenancy. That's that's what we should look at is try to find a Wyoming case that defines tenancy by the entirety, and then look for a Wyoming case that also brings in bankruptcy and see if there's a case that says you can do the tenancy by entirety at any time else, but not when it's a shield in a bankruptcy. No, I think it's for a shield in general. It's what we're looking at.  No, I do not. No, I do not. There is none. Wyoming does not have a lot of case law on the subject. But what, and I agree, Justice Boudicca. I'm just a judge, not a judge. Judge, sorry. Wyoming law did extend tenancy by the entirety to personal property, but it's been restricted. And to accounts, too. And to accounts. Well, I don't know about tenancy by the entirety. They certainly have said that you can have a joint tenancy with accounts. The issue is having a creditor shield from tenancy by the entirety. In the case of the intangible written personal property, the chattel is supposed to be embodied in an instrument. The tenancy by the entirety is created from the instrument itself. That's Wyoming case law. The types of writings where chattels are embodied in an instrument are like promissory notes, deeds, bills, bonds, conveyances, leases, mortgages. Something that you hand over, sign, and the ownership is clear. The claim tenancy by the entirety assets here are held within a fidelity account. There's no instrument where the ownership of the account exists like the types of the instruments described under Wyoming law. And it's not proper to use the is why does this matter? It has to be something special because you're giving these joint assets a shield, an absolute shield from creditors. Now, number two, the claimed tenancy by the entirety assets are held within the vehicle of a fidelity account. And this vehicle is entirely, by its terms, incompatible with tenancy by the entirety. Well, when I look, when I look at the Wyoming case of Wambeck, W-A-M-B-E-K-E, it talks about, well, it defines for us the definition of instrument. And it talks there about something like a contract or other similar writing. Aren't these agreements that set up these fidelity accounts, aren't those contracts? It's an account application, but it is not the type of instrument. But if you're going with the contract, Judge, you're also looking at what are the terms of that contract. And the terms of that contract are inconsistent with being tenancy by the entirety. Not only is it not the right type, the contract itself says you can't do it. But if the agreement in this case, don't we have, in this case, the unique situation where someone, I think the son-in-law, has written on, this is by Mr. and Mrs. Crow to be held with rights of survivorship. It says by tenancy by the entirety, and it's believed to have been an unknown fidelity employee wrote it on there. And does that do anything for us? I mean, that's, then we got, then we have an account with a contract with specific reference. No, I don't, because I don't think this is an instrument of conveyance or transfer. It's an account application. But also what it is, is the clear and unambiguous language of the terms provides for the absolute and complete individual alienation of the assets. That is inconsistent with holding tenancy by the entirety assets. What if that didn't apply, but Mr. and Mrs. Crow issued a durable power of attorney to one another and said, you can basically act on my behalf. Now, would that, the existence of those durable powers of attorney have been consistent with the terms of a tenancy by the entirety? I don't, if, if Mr., if you're saying that Mr. and Mrs. Crow giving a durable power of attorney to each other, which didn't happen here, it was to their, to their daughter. No, it's a hypothetical. No, I understand. I just wanted to make sure I understood the terms of the hypothetical before I respond. Then in that situation, the power of attorney gives you the power to act, but it does not, and it's with fidelity or with somebody else and you can act for them. So then yes, maybe in that situation there would be consent, but I still think you have to go through consent because if one acts for their own individual interests, I don't think that that is consistent with tenancy by the entirety. Well, what's different about my hypothetical substantively and what actually happened, because you could reconcile, assuming that there was an instrument of conveyance, your first argument, that you could reconcile the existence of this term in the fidelity account agreement with the existence of a tenancy by the entirety, because the assumption of fidelity was that Mr. Crow during his lifetime could withdraw funds unilaterally, but assuming the fidelity was simply going to assume that that was with the consent of Mrs. Crow or vice versa. Fidelity, I'm sorry, I didn't mean to interrupt. Fidelity says otherwise. Fidelity doesn't care. Fidelity says in their account terms that you can individually alienate it and they'll enforce it. The only thing you can't do is change the name on the account. And why does that matter here is that it's the creditor shield. As part of the briefing in this case, there's only one case cited where tenancy by the entirety assets were held through a vehicle that was incompatible with holding assets by tenancy by the entirety. That's the In re Reuter case. Claimed tenancy by the entirety assets were held in trust, but the trust terms provided for individual alienation. The wife. The wife had the power. The husband was in bankruptcy. The court found that was incompatible with tenancy by the entirety. Now the appellees and the lower courts tried to dismiss this as not being Wyoming law. The bankruptcy appellate panel did so, and to be blunt, somewhat hypocritically did so by saying Missouri tenancy by the entirety law is persuasive in other areas, but apparently not on this issue. And like I said to Judge Briscoe, they have not found a Wyoming case where the claim tenancy by the entirety assets are held in a vehicle that is so incompatible with tenancy by the entirety, so it doesn't work. So looking to Missouri. Is there any document that could have been generated here that would have successfully created a tenancy by the entirety? I can't think of one at the moment, Your Honor. The point is this was an account application, and so I've got the facts before us here, and it just didn't do it because this is a blatant attempt to try to avoid creditors through just writing tenancy by the entirety on an account application when the account itself says we're going to give it to one person if they want to withdraw it all, and nothing you can do about it. So we looked in Missouri. The bankruptcy court found the bankruptcy judge found that there was an intent to, you know, create this type of tenancy. What do we do about that? That shows that Mr. and Mrs. Briscoe. It shows the intent, Your Honor. I'm sorry, I didn't mean to interrupt. You know, Your Honor, everybody would like to be able to shield all of their assets from creditors, so the intent to shield it is, of course. The issue is can you, and can you under these situations? It makes sense that you have to do something more to have the creditor shield. In the few states where this is still recognized, it's a powerful tool, the creditor shield. Makes no sense, not reasonable to extend it. The other, another issue, and I'm into my rebuttal time, but I'm going to continue on my main argument. The third reason, this unabashed self-dealing by the insider family members severed the tenancy by the entirety. They took almost a million dollars out of this. Was that found to be, excuse me, was that found to be in payment of a joint debt? Yes, but the thing is it wasn't payment of a joint debt. It is so absolutely clearly erroneous to say that it was payment of a joint debt. There is a note. The note is payable. The ones who gave the money is an entity, Marvin Investment Partners. The ones who are supposed to pay it are three trusts and a foundation, and to say that the obligation of the debtor and his spouse just defies the evidence that's before the case. It's just not there. Well, assuming the Marvins were self-dealing, if we assume that arguendo, why would that self-dealing reflect an intent of the Crows to vitiate, to sever the tenancy by the entirety, assuming that it existed? I don't understand how self-dealing fits your severance theory. It does not benefit the estate. It is just a personal slush fund that's not being used for the tenancy. Mrs. Crow said, I don't know what happened to them, basically. My daughter just did everything. Well, doesn't it benefit them because now they don't owe that money? They never owed that money, Judge. The only ones who owed it were three different trusts. Yeah, I understand that. Okay. So, it's not for their benefit. This is totally self-dealing, and their powers of attorney gave them the right to act for the tenancy, for the people for this tenancy. It didn't give them the right to just do everything that they wanted personally. And also, their argument is that this was voluntarily severed. The bottom line here is the debtors are now, excuse me, the appellees are now arguing that because Mr. Crow passed, that that severed the tenancy, even though we're supposed to provide the rights at the time of the filing of the petition, and saying that the death Mr. Crow changed it. Well, there was a voluntary joint severance by the debtor, his spouse, and the trustee, and I believe that post-petition action also severed the tenancy. I notice I'm out of time unless the court wants to give me any more. Thank you, counsel. Your time has expired. Let's hear from the Crows, and I believe that Mr. Cohen's going to go first and then Mr. Winship second, correct? That's correct, Your Honor. You may proceed, Your Honor. Thank you. Members of the court, I'm Brent Cohen. It's my pleasure to speak on behalf of Appellee Carol Ann Crow this morning. Initially, given the current procedural posture of this case, there's simply no final order for this court to review, and Radiance has failed to establish grounds for appellate jurisdiction. What about Imre Bretshaw? I'm sorry, Your Honor. I don't understand your question. Well, Imre Bretshaw, I thought, said that the granting or denial of an exemption is a final order for purposes of a bankruptcy case. I think that there are two points I would make in response to that, Your Honor. First, under Bullard v. Blue Hills, I think we're all cautioned in the way that we slice and dice in these bankruptcy cases. Even in the context of an exemption ruling, a final order must still be a final order. And in this particular situation, when the court said, I'm recognizing the tenancy by the entirety, but the determination of the extent of that depends upon whether or not there's joint debt. Clearly, we didn't get to a final order. The second thing I'd point out in response to your question, Your Honor, is go back and look at the record here. You'll see that the bankruptcy court's amended memorandum decision on that exemption issue was entered on June 13, 2018. The notice of appeal to the bankruptcy appellate wasn't filed for another two months. That was after the court ruled on the turnover issue. So there's a problem in the record here. If indeed the ruling on the exemption is a final order, they missed their appeal deadline. They had 14 days from June 13, 2018. They waited two months. So you can't have it both ways, Your Honor, if they're insisting that the amended memorandum decision is the final order. They missed the appellate deadline. Do we have a situation where we have a final order now, and basically we're just talking about a premature notice of appeal? I think not, Your Honor, for this reason. You'll notice that we've filed a copy of Judge Parker's ruling on summary judgment to give the court a better opportunity to analyze that situation. What you can see is that she granted my client's motion for summary judgment on the entitlement issue. She denied the trustee's motion, but she also reserved some issues for trial. And then, out of an abundance of caution, stayed the order pending the outcome of this appeal. Well, isn't the issue, the tenancy question, tenancy by the entireties, isn't that issue before us? Isn't that a final determination? And I know you've talked about, well, the time has run to appeal that. But if we ignore that argument and move on and say, this is what everybody's been arguing about for years, can we review it? Your Honor, as I read this court's ruling in In Re Durability, which is based on another Tenth Circuit decision, Lewis v. B.F. Goodrich, there are circumstances under which the lack of finality can be cured. Based on those decisions, that requires one of two things, either a final order from the bankruptcy court, which we don't have, or a Rule 54 certification, which we don't have. And so, Your Honor, I think that, yes, there are circumstances under which we could get to finality, and this court would have jurisdiction. But under the peculiar circumstances of this case, where the summary judgment ruling was entered and then stayed, and we didn't get to Rule 54, I don't think that we have a sufficient cure. I'm a little puzzled. I mean, you're representing Mrs. Crow, right? Correct. Wouldn't you want this issue resolved, tenancies of the entirety, and whether or not she has any rights to these funds, and if so, what those rights are? Your Honor, I'd love to have this issue resolved, but let's talk about the totality of the procedural situation here. We're now litigating the same issue in bankruptcy court, waiting for a final decision. The trustee has expressed his intent to appeal that ruling, and so my preference, Your Honor, is, yes, that this be decided, but not in a piecemeal fashion, and that's what Bullard tells us not to do. We've been up and down through the appellate courts here, and the final order rule is designed to give us one appeal in which all of these issues will be resolved. And instead, in this case, Your Honor, what's happened is that we've been whipsawed. I'm down in the bankruptcy court litigating the very issue, at least one of them, that's been presented on appeal. So, for those reasons... Maybe we should remand with directions to enter a Rule 54B certification. I would be happy with that, Your Honor. I would like this to come back and be resolved, and I would like it to be resolved in one fell swoop. A 54B certification wouldn't cause the district court or the bankruptcy court to move on. That would give us the authority to I think that gives the parties the ability to fashion the manner in which this comes up on appeal so that all of these issues get decided in a single appeal by a single panel, and I think that's to everyone's benefit. So, in conclusion, on this issue, we're still waiting for a final order from the bankruptcy court that interlocutory nature of the appeal that was before the bankruptcy appellate panel wasn't finalized, if you will, as prescribed under Tri-Valley Distributing. We don't have a final order or a Rule 54B certification. Those are the three considerations, and I think under those circumstances, we simply don't have appellate jurisdiction. That doesn't mean we won't eventually have it. It doesn't mean that all of the parties don't desire a resolution, but it needs to come up properly, and it needs to come up in a single appeal. That said, I'm going to yield the remainder of my time to Mr. Winship. Thank you, Mr. Winship. You may proceed. Thank you. May it please this court, counsel. My name is Steve Winship, and I've been representing Tom Crow, the debtor in this case, who is now deceased. Let me look to the merits, and if I have time, I'll pick up on what Mr. Cohen was talking about and particularly address this argument about a potential 54B remand. In essence, what we're hearing from Radiance is an argument that is much better addressed to the Wyoming legislature as opposed to the judicial branch. Radiance's argument is, in effect, an attack upon a long-held doctrine that relates to marriage. In fact, this tenants-by-the-entirety institution, if you will, predates the founding of the United States. This is tenants-by-the-entirety is actually a recognition of the biblical concept or the belief that when spouses are joined in marriage, they become one, a unified entity. Thus, this attack by Radiance on this long-held marriage concept really is a public policy-type situation. As I said, I believe that this is best directed. This concern would be to seeing if the we're hearing this morning. Richard, how do you respond to your adversary's argument that it's not a legislative issue, that it's an issue that's implicated by the terms of the account agreement itself, that by definition, a tenancy-by-the-entirety, just as you pointed out, is a marital union acts as one, and by definition, the account agreement specifies that, to the contrary, each can unilaterally deplete the account of everything without the consent or knowledge of the other, and that that's inherently inconsistent with the very nature, the very essence of a tenancy-by-the-entirety? This argument has been made to the courts both in Wyoming and other states that deal with tenants-by-the-entirety. This, it's the idea that somehow the tenants, the entirety ownership has been severed by the ability to write a check or whatever. And this was first, I think, dealt with by the Ward, Terry and Company versus Hanson decision, and then much more recently in 2018, the Lucy versus Blackwell case. And you'll see that unless there is some sort of voluntary agreement by both spouses that it be terminated, that the ability of one spouse to actually be able to write a check or whatever, that is not sufficient to disregard that intent. You know, there is a Third Circuit case, Bannon, that dealt with this directly. What's the reason? Okay, I mean, but apart from citing the cases, what is the reason for that? The reason is, there's probably a couple. The first that comes to mind, Your Honor, is the practicality of it. There needs to be the ability. First, let's start out. The Wyoming statute that talks about tenants-by-the-entirety incorporates not just real property, but personal property. So it's a very broad concept. And personal property is one of those things that may require that there be the ability to alienate certain parts of it or whatever. And so from a practical standpoint, one of the owners should be able to go ahead and, let's say, write checks. And the presumption under these various cases is that the other spouse was agreeing to it. That is, that there was consent. And so most of these cases say the only way you're going to sever tenants-by-the-entirety are such things like divorce, death, that sort of thing. To me, this is a concept that has been long determined. And I can't say that very much about Wyoming law generally, but this is one. Is the trustee at all involved at this point? I don't see a trustee on this appeal. No, in fact, that's why we brought up the fact that the turnover action, that is an exclusive right of the trustee or debtor in possession. So therefore, Radiance has no standing to even bring the turnover action. I think the trustee recognized that, in fact, this is not a final order. That's why they did not, that's why the trustee and his counsel did not appeal the BAP order. Please remember that if you look at the procedural mechanism on this, the BAP first denied the attempt at appeal. Then there was a second run at it, and the BAP said, okay, we'll accept this as an interlocutory appeal. And it is that interlocutory appeal decision that comes before this court. I see nothing that gives this court the ability to, that's not a final order. Whereas the BAP can take on interlocutory orders. This court's fairly limited. We can take on interlocutory orders. Also, have we done that in this case? Have we said this is a case on petition that will take on interlocutory? No, you have not granted any interlocutory appeal. Just for fun though, if we could look at this case, what do you think is left for us to address? Very important is the extent of the exemption. In other words, the bankruptcy court has decided there is in place a tenants by the entirety exemption. If we accept that, we have a tenancy by the entirety. And now we have the bank, the debtor, the bankrupt, whichever terminology and era you grew up in, he is deceased. And now we have, as I understand it, a splitting of the fund as though we were talking about common tenants in common. And I think Mrs. Crow has half of it, right? I disagree because I think this issue was actually addressed in the chair notion decision by this court. And it specifically, as I read that decision, disagree with this tenants in common. I'm trying to sort out where we are and what we have now. I know we want to talk about tenancy in entirety, but I think that boat is sort of sailed because we have the realities of Mr. Crow's death and we have subsequent orders by a couple of courts. So where are we now? Who's So the one thing I want to make sure that is understood by the nature of your question is the fact that first off, we deal with exemptions as they were handled or claimed on the date of exemptions. Oftentimes aren't appropriate. And if anything, as in this case, will you admit that things have moved on since that ruling in that Mrs. Crow has been given, as I understand it, half of the fund. Is that right? She is now, as a result of the death, been granted all of the funds, all of the funds that that by applying chair notion and tenants by the entirety law, Mrs. Crow is to receive all of those funds. And so what is left is a determination, I guess, by the bankruptcy court as to whether there are joint debts that she could be liable for. Is that right? That's exactly right. That is so two other people are shaking their heads. No. Okay. The so we have the exemption determined. We don't have the full extent of it determined. And that's where the 54 be determination. Really, I disagree with as a remedy because we still need to know the full. So what is left for the court to determine the bankruptcy court? The is my understanding is it is the extent of the tenants by the entirety exemption. In other words, as you put it, are there joint debts that might somehow be able to be utilized to eat in or subtract from the exempt amounts? Okay. And as I understand it, if that were true, wouldn't that be something the trustee and bankruptcy would be interested in pursuing? He would, I believe he would be. He is pursuing that your honor. That's what is left to have done. Yeah. Thank you. Okay. Although your time expired, Mr. Gruden, I'd like to give you two minutes for rebuttal. And if you would specifically start by addressing Mr. Collins jurisdictional argument. Yes, your honor. First with the jurisdictional argument, and this is in our briefing on it. If an issue, if an issue is finally disposed of a discrete dispute within the larger case and determines and seriously affects substantial rights can cause irreparable harm. We have to wait. That's the Bullard v. Blue Hills bank. And I think Mr. Cohen addressed that that's appealable. And also judge Bacharach mentioned the Brayshaw case. This is the issue on the exemption is done. We, I can't do anything back in bankruptcy court to deal with the fact that the bankruptcy court has said the tenancy by the entirety exemption applies. The only way to decide it is here on appeal now. And I believe that it is more than final. You know, this is an exemption that has been finally determined. And just how much out of that exempt money you may take. That may still be an issue, but the exemption itself, that's absolutely final. With respect to also Mr. Cohen's issue that, well, maybe we, you know, we didn't appeal and lost our appeal after the bankruptcy court's first opinion on this, we filed an appeal. We were said that we were in interlocutory. Disagree with that. But then the second time they did an amended one, we let the amended one go because it didn't change anything. Then it was interlocutory and we thought the turnover order absolutely made it final. So there's no missing on our appeal. With respect to the other issues, also Mr. Winship mentioned that we don't have any standing to assert on the turnover order. We joined in that motion. So we have certainly had standing when that was done. As to this being an attack on the tenancy by the entirety, no, it's not an attack on tenancy by the entirety as a whole. By the entirety being twisted out of all recognition from where it was before. And finally, I would just say in closing, behind all of the judges in your virtual courtroom is reason is the soul of all law. It is simply not reasonable to deny these funds to the bankruptcy estate and creditors when all of these flaws exist with respect to the tenancy by the entirety property. Thank you. That's all. Your time's expired. We appreciate the arguments this morning. You will be excused and the case shall be submitted.